**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

APR 09 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| ) | |
| YAHOO! INC. ) | CASE NUMBER 12-mj-3078-DGW |
| 701 FIRST AVENUE ) | |
| SUNNYVALE, CA 94089 ) | **FILED UNDER SEAL** |

### APPLICATION AND AFFIDAVIT
### FOR SEARCH WARRANT

I, Special Federal Officer Andrew Leach, being duly sworn and deposed state:

I am a Special Federal Officer with the Federal Bureau of Investigation, and have reason to believe that on the premises known as:

**Yahoo! Inc, 701 First Avenue, Sunnyvale, CA 94089,**

there is now concealed certain property, including:

### SEE ATTACHED LIST ENTITLED "ATTACHMENT A,"
### (PERTAINING TO E-MAIL ACCOUNT "Jack.Baldwin.83@yahoo.com"),

which constitutes evidence of the commission of a criminal offense or which is contraband, the fruits of crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of committing an offense in violation of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b). The facts to support the issuance of this Search Warrant are as follows:

### AFFIDAVIT

I, Andrew Leach, being first duly sworn state:

### Introduction

1. I am a Special Federal Officer of the Metro-East Cyber Crimes and Analysis Task Force (MCCA). MCCA is an FBI sponsored Task Force assembled to combat a variety of cyber-

related crime in the Metro-East area. MCCA is comprised of law enforcement personnel from approximately 15 different local, state, and federal agencies. I work with other members of MCCA at the FBI's office in Fairview Heights, Illinois. I have worked on cyber investigations on the MCCA since January, 2011. I have been a law enforcement officer in the state of Illinois since 2002. I am an Investigator at the St. Clair County Sheriff's Department. During this time I have conducted and assisted in the investigation of state and federal offenses, including sex offenses, internet crimes against children, financial crimes and homicides. Since January 2001, I have investigated matters involving the online exploitation of children, particularly regarding the possession, receipt, and transmission of images of child pornography. I have gained experience in the conduct of such investigations through training seminars, classes, and work with other federal cyber-crime investigators. Specifically, I have received training and direction from other agents of the MCCA regarding habits of child pornography collectors/distributors, as well as investigation crimes involving the online exploitation of children in general. I have been trained in the use of techniques used to extract computer data, as well as data from cellular telephones, to include conducting a forensic preview of a computer during a search of an individual's residence. I have worked on approximately ten cases involving the online exploitation of children, three of them as lead case agent, and the remainder as co-case agent.

2. I am currently investigating the activities of Jack C. Baldwin, Jr., 513 East McKinley, Belleville, IL 62220. My investigation began as a report received from the Royalton Police Department regarding the suspect's commission of the offense of predatory criminal sexual assault of a child, in violation of Illinois law. The suspect, Jack C. Baldwin, Jr., is also suspected of producing, possessing and receiving child pornography, transferring obscene matter to a minor,

2

and/or enticement of a minor.

3. I make this affidavit in support of a warrant to search the e-mail account of the suspect Jack C. Baldwin, Jr.

4. This affidavit seeks to search for and to seize contraband, evidence or instrumentalities of violations of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b).

### Background Regarding Computers, the Internet and E-mail

5. Based upon my knowledge, training and experience, and consultation with other law enforcement officers experienced in investigations regarding the exploitation of children, I know that:

   A. The Internet is a world wide computer network which connects computers and allows communications and the transfer of data and information across state and national boundaries. Individuals who utilize the Internet can communicate by using electronic mail ("e-mail"). E-mail is an electronic form of communication which can contain letter type correspondence and graphic images. E-mail is similar to conceptional paper type mail in that it is addressed from one individual to another and is usually private. E-mail usually contains a message header which gives information about the individual that originated a particular message or graphic, and importantly, the return address to respond to them.

   B. Individuals that have an Internet e-mail address have a subscription to, membership, or affiliation with, an organization or commercial service which provides access to the Internet computer network. A provider of Internet access is referred to as an "Internet service provider" or "ISP". One such ISP is Yahoo! Inc.

3

      C.     Internet service providers reserve and or maintain computer disk storage space on their computer system for the use of the internet service subscriber for the storage of electronic communications with other parties (e-mail), which includes graphic files, programs, or other types of data stored in electronic form.

      D.     Internet service providers maintain records pertaining to their customers that could include credit card and other billing information, account access information, e-mail transaction information, news group access and posting information, account application information, and other information both in computer data format and in written record format that records the activities and interactions of these accounts.

      E.     In order to completely analyze the data maintained by an Internet service provider on an individual account, and the data maintained in an individual's data storage area on an Internet service provider's computer system, all data pertaining to an individual account should be seized and subsequently processed at a secure location by investigative personnel.

### Stored Wire and Electronic Communication Access

6.     Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access" and gives this Court authority to issue a search warrant for the records sought in this warrant even though these records are kept in another state, as follows:

      A.     Title 18, United States Code, Section 2703(a) provides, in part:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal

4

Rules of Criminal Procedure by a court with jurisdiction[1] over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

B. Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection--

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant . .

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service--

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

C. Title 18, United States Code, Section 2703(c) provides, in part:

---

[1] Title 18, United States Code, Section 2711, provides, in part: "the term 'court of competent jurisdiction' has the meaning assigned by section 3127, and includes any Federal court within that definition, without geographic limitation." Title 18, United States code, Section 3127, provides, in part: "the term 'court of competent jurisdiction' means-- any district court of the United States."

5

(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant . . .

D.  Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter —

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

E.  Title 18, United States Code, Section 2510, provides, in part:

(8) "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

(17) "electronic storage" means—

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

6

    (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

F.    Title 18, United States Code, Section 2703(g) provides as follows:

    (g) Presence of Officer Not Required. Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service.

## Background of Investigation

7.    On December 17, 2011, K▓▓ J▓▓ the mother of the 11 year old victim, identified herein as E.M., contacted the ▓▓▓▓ Illinois, Police Department, and reported that E.M. received a pornographic picture from suspect Jack C. Baldwin, Jr., a 46 year old man, on E.M.'s victim's cellular phone. J▓▓ told the officers that E.M. also sent nude photographs of her genitalia to Baldwin. J▓▓ told the officers that she discovered this information when she saw a text message from Baldwin on E.M.'s cellular phone telling her to delete the photograph that he sent E.M. (later determined to be a nude picture of his erect penis). J▓▓ said that when she confronted E.M. about the text, E.M. would not discuss it with her, but that E.M. later provided the information about the text messages and photographs to J▓▓ mother, ▓▓▓▓. E.M. told ▓▓▓ that she sent the nude picture of herself to Baldwin so he would "shut up and leave her alone about it."

8.    J▓▓ was friends with Baldwin, and she and E.M., and sometimes J▓▓ older son, would often visit him at his residence in Belleville, Illinois. J▓▓ told the officers that Baldwin was "like a godfather" to E.M.

9.    E.M. was interviewed, and reported that on or about December 12 or December

7

14, 2011, Baldwin sent her a nude picture of himself to her cellular phone, and that he later sent her a text telling her to delete the photograph. E.M. said that Baldwin then persuaded her to send him a nude text of herself. E.M. also reported that Baldwin had touched her vagina on at least two occasions while she and J▓▓ were visiting Baldwin in Belleville, Illinois. E.M. said the pictures were sent to, and received from, Baldwin's cellular telephone.

10. On January 10, 2012, Detective Karl Kraft of the Belleville Police Department was contacted by an Illinois State Police (ISP) Trooper regarding the allegations J▓▓ reported to the ▓▓▓ Police Department. The matter was referred to the Belleville Police Department because the alleged sexual assault(s) of E.M. occurred at Baldwin's residence in Belleville, Illinois, within the Southern District of Illinois.

11. On January 17, 2012, E.M. was interviewed on videotape at the Child Advocacy Center (CAC) in Belleville by a trained child interview specialist. E.M. stated that she had known Baldwin all of her life, and that he would talk to her about "what parents do in bed and stuff." She said that Baldwin told her that he wanted her to come to his house so they could do "all that stuff." When prompted further, E.M. wrote out s-e-x. E.M. said that Baldwin sent her a picture of his penis while going to the bathroom, and told her to delete the picture, which she did. E.M. said that Baldwin asked her for pictures of "between your legs," so she sent him a nude photograph of her vagina to Baldwin's cellular phone. E.M. also discussed the sexual assaults.

12. During the interview, E.M. said that Baldwin told her that he wanted her to be "in his parade of naked girls." E.M. said that a girl, who she later identified as ▓▓▓ told her that ▓▓▓ saw pictures of a "ton of naked girls" on the defendant's laptop (the defendant later destroyed the laptop). E.M. said that Baldwin told her that he wanted her to be "the next one," and

8

that he wanted to touch her with her clothes off. E.M. said that Baldwin called her and told her that he would like to see her naked. E.M. reiterated that Baldwin sent the nude pictures of his penis from Baldwin's cellular phone before she sent him the nude picture of her vagina and the pictures of her in her underwear.

13. K▮▮▮ J▮▮▮ was interviewed at the police department after the CAC interview. She said that called Baldwin and confronted him about sending E.M. the pictures of his penis and having the victim send him nude pictures of her vagina using their cellular phones. Baldwin told J▮▮▮ that he might have accidentally sent the picture of his penis to E.M. He also admitted receiving some nude pictures of E.M., but told J▮▮▮ he did not know why he got the pictures. J▮▮▮ said that she warned Baldwin that she was going to report the incident to the police.

14. A state search warrant was obtained for Sprint, the carrier of the cellular telephone that Baldwin used to send and receive nude photographs. Officers recovered two nude pictures of an erect penis, a picture of a nude vagina (believed to belong to E.M.), and pictures of E.M. in her underwear. The pictures described above were sent by Multimedia message (MMS). The pictures were shown to E.M. and she positively identified the photographs as the ones that were sent to her, as well as the ones she sent to Baldwin. E.M. said that she sent him the pictures of herself because he kept "bugging her" to send him a picture of her "private parts," so she did to make him "shut up." Baldwin told E.M. that he was going to take the pictures that she sent him, send them to his camera, and then eventually put it on his laptop.

15. On January 29, 2012, Baldwin, who was arrested at his home that day and taken to the Belleville Police Department, provided a voluntary, videotaped statement to officers with the Belleville Police Department after waiving his *Miranda* rights. During the interview, Baldwin said

9

that E.M. was the 11 year old daughter of J███, and that he had known E.M. her entire life. Baldwin stated that he must have accidentally sent the two pictures of his nude penis to E.M. rather than to J███. He also admitted that E.M. sent two pictures to his cellular phone, one of her nude and one of her wearing underwear. He said that E.M. sent him the pictures because she had told him "sexual things." Baldwin said that he deleted the pictures of E.M. from his cellular phone, and that he did not send them to his laptop computer. He said that he might have sent E.M. a text message using his cellular phone telling her that the picture of her naked vagina was "cute." Baldwin identified the same pictures shown to E.M. as the pictures that were sent by him and that he received from E.M. via his cellular phone. He said that he told E.M. that it would be kind of cute to see her vagina, and then she sent the picture of her nude vagina. Baldwin told the officers that he thought the picture of E.M.'s vagina was cute, but that it would have been a little more enticing if she had opened her legs wider. Baldwin said that he knew what he did was not right, and that he never meant to hurt E.M. He denied sending naked pictures to any children besides E.M.

16. Baldwin told the officers that he did not have any child pornography on his laptop computer, but that he did have "a half of dozen" of naked teenagers on the computer. He said that he is into looking at naked girls that have just hit puberty, which he said was usually in the age range of 10 to 14 when the girls start getting some hair on their vagina. He also admitted looking at pictures of girls as young as 5 years of age.

17. Baldwin said that he sent the pictures of his nude penis to E.M. at her request. He said that he told E.M. to delete the pictures because he did not want J███ to see them because J███ "freaks out" about everything. He acknowledged that it was wrong to have asked E.M. to send him a naked picture of herself. Baldwin denied ever touching E.M., although he did admit that he would

10

sometimes be turned on a little bit when she sat in his lap. He also told the officers that he thought he might have sex with E.M. in the future, and that he may have possibly told that to E.M. Baldwin said that he did not know that it was illegal to look at naked pictures of young girls, and that he would get naked pictures of young girls from the website "Usenet." Finally, Baldwin said that he may have sent the pictures from his cellular phone to his Yahoo! and Google! e-mail accounts. He identified his Yahoo! e-mail account as Jack.Baldwin.83@yahoo.com. He identified his Google! e-mail account as jbaldwin65@gmail.com.

### Search Procedure

18. In order to ensure that the search only includes the accounts and/or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo! Inc. to assist agents in the execution of this warrant in the following manner:

A. The search warrant will be presented via fax to Yahoo! Inc. personnel who will be directed to isolate the accounts and files described in Attachment A;

B. In order to minimize any disruption of computer service to innocent third parties, Yahoo! Inc. employees trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A;

C. Yahoo! Inc. employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files.

### Conclusion

19. Based upon the above information, I believe there is probable cause to search and seize the items listed in Attachment A, pertaining to the e-mail account Jack C. Baldwin, Jr.

11

(Jack.Baldwin.83@yahoo.com).

20. Since this affidavit is being submitted for the limited purpose of securing a Search Warrant, I have not included each and every fact known to me concerning this investigation and I have set forth the facts that I believe are necessary to establish probable cause to believe that evidence of violations Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b) may be found within the email account referenced herein.

21. Disclosure of the contents of this application and affidavit and the search warrant could compromise and jeopardize an ongoing investigation and witnesses who have provided information to investigating agents and possibly reveal the identity of the juvenile victim identified above. For that reason, we request that the application and search warrant be sealed.

FURTHER AFFIANT SAYETH NAUGHT.

ANDREW LEACH
Special Federal Officer
Federal Bureau of Investigation

STEPHEN B. WIGGINTON
United States Attorney

ANGELA SCOTT
Assistant United States Attorney

State of Illinois     )
                      ) SS.
County of St. Clair   )

Sworn to before me, and subscribed in my presence on the 9th day of April, 2012, at East St. Louis, Illinois.

DONALD G. WILKERSON
United States Magistrate Judge

13

## ATTACHMENT A

## 1. SERVICE OF WARRANT AND COPYING OF COMPUTER FILES BY ISP

As authorized under 18 U.S.C. § 2703(g), the following procedures shall govern the service and execution of this warrant:

1. The officer executing this warrant shall effect service by any lawful method including faxing the warrant (with Yahoo! Inc.'s consent) to Yahoo! Inc.'s offices at the location specified in the warrant.

2. The officer executing this warrant shall permit Yahoo! Inc., as custodian of the computer files described in Section 2 below, to locate the files, copy them onto removable electronic storage media and print them out as paper copies, and deliver the copies to the officer, who need not be present during this process at the location specified in the warrant.

## 2. LIST OF ITEMS TO BE SEIZED

a. CDs containing all electronic mail from, sent to, and received by the below-listed individual in individual files in ASCII format from January 1, 2011, to present: Jack.Baldwin.83@yahoo.com.

b. All stored files in original format in individual files for Jack.Baldwin.83@yahoo.com from January 1, 2011, to present.

c. Printout of all the above from original storage.

d. Log file of all activity to the above-listed individuals which includes dates, time, method of connecting, port, dial-up, and/or location from January 1, 2011, to present.

e. All business records, in any form kept, in the possession of Yahoo! Inc, 701 First Avenue, Sunnyvale, CA 94089, which pertain to the above listed subscriber and account, to include, but not limited to, Subscriber's full name, all screen names associated with the subscriber and accounts, all account names associated with the subscriber, method of payment, phone numbers, addresses, and detailed-billing records.